IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| STANLEY D. DETHMAN,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN KIRKEGARD;<br>ATTORNEY GENERAL OF THE<br>STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 12-03-H-RKS<br><br>ORDER DENYING PETITION AND<br>DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Petitioner Stanley Dethman's petition for writ of habeas corpus under 28 U.S.C. § 2254. On January 28, 2013, Mr. Dethman, acting through counsel David Ness, filed an amended petition. Respondent ("the State") filed an answer on September 11, 2013. Mr. Dethman did not file a reply.

On June 28, 2013, based on the parties' written consent, *see* Consents (Doc. 19), the matter was assigned to the undersigned for all purposes, including entry of judgment. 28 U.S.C. § 636(c).

**I. Background**

On September 16, 2008, Mr. Dethman was charged with one misdemeanor count of driving under the influence, a violation of Mont. Code Ann. § 61-8-401

(2007); one felony count of assault on a peace officer, a violation of Mont. Code Ann. § 45-5-210; and one misdemeanor count of resisting arrest, a violation of Mont. Code Ann. § 45-7-301. Am. Pet. (Doc. 14) at 4 ¶ 8.

The charges arose in connection with a bystander's report that Mr. Dethman appeared to be driving under the influence and a police officer's follow-up contact with Mr. Dethman. In the course of that contact, Mr. Dethman fled from the officer, was tased and placed under arrest, and failed field sobriety tests. *Id.* at 3-4 ¶¶ 1-7.

Ben Krakowka of the Public Defenders' Office was appointed to represent Mr. Dethman. Shortly after Mr. Krakowka's appointment, Mr. Dethman expressed dissatisfaction with his services. Following the policies of the State Appellate Defenders' Office, Mr. Dethman repeatedly attempted to obtain new counsel over the next few months. *Id.* at 5-7 ¶¶ 4-8.

On January 29, 2009, Mr. Dethman was advised that his case would not be reassigned to a new attorney. On the same day, Mr. Krakowka sent a letter to Mr. Dethman. He told Mr. Dethman that his options extended to proceeding to trial with Mr. Krakowka as counsel or conducting his defense *pro se*. He also instructed Mr. Dethman to write a letter to the trial court asking for Mr. Krakowka's removal if he wished to terminate Mr. Krakowka's services as counsel. *Id.* at 7-8 ¶ 10.

On February 4, 2009, Mr. Dethman wrote to the trial court. He stated that he

had asked Mr. Krakowka to "bring me before this Honorable Court to request change of counsel on more than one occasion and he refuses to do so." He also asserted that "I have been trying to remove Mr. Krakowka since late September '08." He explained that he "tried to follow proper procedures and ha[d] been attempting to resolve this issue well before the trial date [was] set." Am. Pet. at 8 ¶ 11.

The trial court held a hearing on Mr. Dethman's motion on February 10, 2009. Mr. Dethman, Mr. Krakowka, and the prosecutor were present. *Id.* at 8 ¶ 12. The trial court advised Mr. Dethman that, based on its review of Mr. Dethman's letter and the attached correspondence, Hr'g Tr. (Doc. 5-5) at 4:9-17,[1] as well as Mr. Krakowka's performance in court to that point, *id.* at 5:5-20, Mr. Dethman had shown no reason to believe Mr. Krakowka was "not doing a reasonably good job," *id.* at 5:9. Instead, he had shown only differences of opinion with his attorney. Substitution of counsel was denied. Mr. Dethman was advised that the trial, scheduled to commence seven days later, would not be delayed. He was advised of the dangers and disadvantages of self-representation. *See id.* at 6:15-22, 8:23-

---

[1] Counsel for Mr. Dethman was previously ordered to respond if he had reason to believe the State's exhibits were not the correct documents from the state court record. Order to State to File Answer (Doc. 16) at 3-4 ¶ 6. Counsel did not respond to the order. *See also, e.g.*, Am. Pet. at 9-10 ¶¶ 13-14. Accordingly, the Court will take judicial notice of the transcript of the hearing held on February 10, 2009, at which Mr. Dethman waived his right to counsel, *see* Hr'g Tr. (Doc. 5-5) at 1-21. The Court will also take judicial notice of the decision of the Montana Supreme Court on direct review, *State v. Dethman*, 245 P.3d 30 (Mont. 2010). *See Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

12:19, 16:19-17:15, 19:5-20. Mr. Dethman was required to choose between proceeding with Mr. Krakowka as his attorney or proceeding *pro se*. He chose to proceed *pro se*. *Id.* at 18:17-24.

Trial commenced one week later, on February 17, 2009. Mr. Dethman pled *nolo contendere* to the misdemeanor DUI charge and proceeded to jury trial on the felony charge of assaulting a peace officer and the misdemeanor charge of resisting arrest. The jury found him guilty of both offenses. Am. Pet. at 10 ¶ 16.

On April 14, 2009, Mr. Dethman – once again represented by Krakowka – was sentenced to serve a total of ten years in prison, with five suspended, and fined $1,100. *Id.* ¶ 17.

Mr. Dethman appealed. As relevant here, he asserted the trial court erred in failing to conduct an adequate inquiry into Mr. Dethman's complaints about Mr. Krakowka's performance. He also claimed his decision to proceed *pro se* was not unequivocal or voluntary. On December 21, 2010, the Montana Supreme Court rejected Mr. Dethman's claims and affirmed his conviction. *Id.* at 11-13 ¶¶ 3-7.

Mr. Dethman filed his federal petition on December 19, 2011. *See* Pet. (Doc. 1) at 6, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Claims

Mr. Dethman asserts, first, that the trial court's "colloquy and consideration of Petitioner's request for new counsel" was inadequate; and second, that he did

4

not unequivocally, knowingly, and voluntarily waive his right to counsel. Am. Pet. at 15-16.

Acknowledging that the Montana Supreme Court decided these claims on the merits on direct review, Mr. Dethman focuses his claims on the criteria of 28 U.S.C. § 2254(d). He alleges, as to each claim, the Montana Supreme Court's decision "was contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Am. Pet. at 15-16; 28 U.S.C. § 2254(d)(1), (2).

### III. Analysis

The amended petition, read in light of the hearing transcript and the Montana Supreme Court's opinion, fails to show that Mr. Dethman is in custody in violation of the United States Constitution. 28 U.S.C. § 2254(a).

**A. Trial Court's Inquiry into Complaints Against Counsel**

The Supreme Court holds that the Sixth Amendment requires a trial court to inquire into conflicts between counsel and a defendant. *E.g.*, *Mickens v. Taylor*, 535 U.S. 162, 166-72 (2002) (citing cases). But its cases extend only to "legal conflicts of interest – an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest[s] and those of the client," not

5

to "personality conflict." *Plumlee v. Masto*, 512 F.3d 1204, 1210 (9th Cir. 2008) (en banc). Where an indigent defendant has a dispute with appointed counsel, the holdings of the Supreme Court extend simply to the observation that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

In light of that narrow holding, Mr. Dethman may prevail here only if he shows a Sixth Amendment violation. In other words, he must show his conflict with Krakowka "actually affected the adequacy of [counsel's] representation," *Mickens*, 535 U.S. at 171 (emphasis omitted), in that Mr. Krakowka "was influenced in his basic strategic decisions" by the dispute with Mr. Dethman, *id.* at 172 (emphasis omitted). He need not show prejudice in the form of "a reasonable probability that . . . the outcome of the proceeding would have been different," *Strickland v. Washington*, 466 U.S. 668, 694 (1984), because divided loyalty on counsel's part necessarily renders a verdict unreliable, *see Mickens*, 535 U.S. at 172-73. A truly bitter conflict between client and counsel could affect the adequacy of counsel's representation and could be evidenced by a complete breakdown in communication; short of a division of loyalties, however, the Sixth Amendment does not mandate any particular inquiry or outcome.

Mr. Dethman claims the trial court "did not adequately investigate the reasons underlying the Petitioner's request for a new attorney or seek to determine the extent of the breakdown in communication." Pet'r Br. (Doc. 15) at 11. But the Montana Supreme Court noted specifically that Mr. Dethman "does not argue on appeal that there *was* either a total lack of communication or ineffective assistance of counsel on the part of Mr. Krakowka." *State v. Dethman*, 245 P.3d 30, 34-35 ¶¶ 13-19 (Mont. 2010) (emphasis added). Mr. Dethman does not make that claim in his federal habeas petition either.

Moreover, in the trial court, Mr. Dethman did not claim there was a complete breakdown in communication or that Mr. Krakowka was pursuing his own interests as opposed to Mr. Dethman's. He claimed only that he was not being defended in the manner he preferred: "I want to be able to present the evidence and the witnesses that I feel that I need to have in the Court to defend myself." Hr'g Tr. at 7:21-23. Mr. Dethman also claimed that Mr. Krakowka was biased because he had prior and future "workings" with law enforcement. *Id.* at 12:11-16. The trial court told him it saw no evidence of such bias, and Mr. Dethman offered none. *Id.* at 12:17-19.

The trial court reasonably understood the dispute to center on Mr. Krakowka's performance. The Sixth Amendment did not require it to ask Mr. Dethman whether he felt the dispute might be better characterized as a total

breakdown in communication instead. Nor was there any objective sign of such a breakdown. Mr. Dethman did not object to Mr. Krakowka's appointment as stand-by counsel. Other than his vague allegation of "bias," he gave the trial court no reason whatever to think Mr. Krakowka's loyalties were actually divided to the point of constituting a legal conflict of interest.

Mr. Dethman cannot meet the high standards of § 2254(d). This claim is denied.

**B. Voluntary Waiver of Right to Counsel**

Mr. Dethman concedes "[t]he trial court followed the format suggested in *Faretta* [*v. California*, 422 U.S. 806 (1975)]. It went through the Petitioner's rights, made sure he was aware of the charges against him, and gave a basic description of what would be required if he decided to proceed *pro se*." Am. Pet. at 14; *see also Iowa v. Tovar*, 541 U.S. 77, 81 (2004). Mr. Dethman alleges only that he did not voluntarily waive his right to counsel because he was put to a choice between proceeding with Mr. Krakowka or proceeding *pro se*.

But every defendant must choose between proceeding with counsel and proceeding *pro se*. Defendants must make other tough choices as well, but putting a defendant to a choice between pleading guilty or facing the prospect of a death sentence does not make his choice involuntary or invalid. *Brady v. United States*, 397 U.S. 742, 755 (1970). Putting a defendant to a choice between telling his side

of the story or preserving his Fifth Amendment privilege does not make his choice involuntary or invalid or render his trial unfair. *Brown v. Walker*, 161 U.S. 591, 597-98 (1896).

Mr. Dethman suggests the filing of his psychological records under seal in the trial court a month before the hearing of February 10, 2009, had some bearing on the voluntariness of his choice. He states that he was diagnosed as schizophrenic in 1974, was discharged from the Marine Corps (presumably on that basis), and received Social Security disability benefits "based, at least in part, on this illness." Am. Pet. at 16. But at the hearing, the trial court asked, "Alright now, so there's nothing wrong [with] you mentally or physically that would prevent you from making a rational decision about this, is that right Mr. Dethman?" Mr. Dethman responded, "Yes sir." The court followed up with "so you're making this decision to proceed to trial without an attorney knowingly and intelligently, is that right?" And Mr. Dethman again responded, "Yes sir." Hr'g Tr. at 11:22-12:5.

The trial court was not obligated to question the accuracy of Mr. Dethman's perfectly appropriate statements in open court in response to specific questions merely because "psychological records" were filed under seal a month before. Neither Mr. Dethman nor Mr. Krakowka suggested Mr. Dethman was not sufficiently competent to proceed *pro se*. Even now, Mr. Dethman does not claim he was incompetent. Neither Mr. Dethman's conduct at the hearing nor his conduct

9

at trial remotely suggested any mental illness made him incapable of understanding the proceedings. *See, e.g.*, Trial Tr. (Doc. 5-7) at 4:22-5:14, 6:17-9:7.

The Montana Supreme Court found Mr. Dethman's decision to proceed *pro se* was knowing, voluntary, and intelligent. *Dethman*, 245 P.3d at 36 ¶ 28. Although Mr. Dethman contends that "[t]his conclusion is contravened by Petitioner's numerous and repeated statements that he did not want to proceed to trial without a lawyer," Am. Pet. at 16, Mr. Dethman clearly understood he must choose between standing trial with Mr. Krakowka as his counsel or standing trial *pro se*. That choice did not violate the Sixth Amendment. Mr. Dethman unequivocally chose to proceed *pro se*. Again, Mr. Dethman cannot meet the stringent standards of § 2254(d). This claim is denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings; *see also Hanson v. Mahoney*, 433 F.3d 1107, 1112 (9th Cir. 2006); D. Mont. L.R. 72.2(a)(1); Consents (Doc. 19-1) at 1-2. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement

to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

While reasonable jurists might have handled Mr. Dethman's request for new counsel differently in the first instance, other reasonable jurists might have done precisely what the trial court and the Montana Supreme Court did. No reasonable jurist could find that the state courts' resolution of Mr. Dethman's claims was "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Mr. Dethman gave the trial court no reason to believe appointed counsel's loyalties were divided. Short of that showing, the Sixth Amendment mandated neither substitution of counsel nor further inquiry. Mr. Dethman's second claim – that his decision to proceed *pro* se was not voluntary – depends on his success on the first, *viz.*, that he was constitutionally entitled to new counsel and could not be compelled to choose between proceeding with appointed counsel or proceeding *pro se*. As there was no constitutional prohibition against compelling him to make that choice, his second claim has no potential merit.

Neither of Mr. Dethman's claims makes a substantial showing that he was deprived of a constitutional right. There is no reason to encourage further

proceedings. A COA is not warranted.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Amended Petition (Doc. 14) is DENIED on the merits.

2. The Clerk of Court shall enter judgment, by separate document, in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 31st day of January, 2014.

                                            /s/   Keith Strong  
                                            Keith Strong  
                                            United States Magistrate Judge